UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2003 DEC -8 A 11: 33

CIVIL ACTION NO.

AT&T WIRELESS PCS, LLC, d/b/a AT&T WIRELESS, ) 
and TOWER RESOURCE MANAGEMENT, INC. )

03  12459 PBS

Plaintiffs, )

MAGISTRATE JUDGE Bowler

v. )

TOWN OF ACUSHNET, MASSACHUSETTS, )
ZONING BOARD OF APPEALS OF THE TOWN OF )
ACUSHNET and LAWRENCE G. MARSHALL, )
RONALD MATTON, RICK LALLY, PAUL HIPOLITO, )
PAUL TRAHAN, as they are Members and )
Associate Members of the Board, )
                        Defendants. )

RECEIPT # 52255
AMOUNT $ 150
SUMMONS ISSUED 8
LOCAL RULE 4.1_____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE 12-8-03

## COMPLAINT

1.  AT&T Wireless PCS, LLC ("AT&T Wireless") and Tower Resource Management, Inc. ("TRM") (collectively, "Co-Applicants"), appeal under both federal and state law from the denial by the Acushnet Zoning Board of Appeals ("Board") of their application for permission to install and operate a wireless communications installation at 181 Peckham Road, Acushnet, Massachusetts. Attached hereto as Exhibit A is a certified copy of the Board's Decision filed with the Acushnet Town Clerk on November 17, 2003 ("Decision").

2.  AT&T Wireless and TRM seek relief pursuant to Section 704 of the Telecommunications Act of 1996, Pub. L. No. 104-104 ("the Telecommunications Act"), codified at Section 332(c)(7) of the Communications Act of 1934, 47 U.S.C. §§ 151-691, and the Massachusetts Zoning Act, M.G.L. c. 40A, § 17.

## JURISDICTION

3. This Court has subject matter jurisdiction over this action pursuant to (a) Section 332(c)(7)(B)(5) of the Telecommunications Act because AT&T Wireless and TRM have been adversely affected and aggrieved by the Board's denial of its application, and (b) 28 U.S.C. § 1331, because this action presents a federal question under the Telecommunications Act. This action appropriately may be brought pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, because an actual controversy exists. The Court has supplemental jurisdiction over the Massachusetts state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the claims arose in this judicial district.

## THE PARTIES

5. The Plaintiff, AT&T Wireless, is a Delaware limited liability company qualified to do business in Massachusetts with a business address of 400 Blue Hill Drive, Suite 100, Westwood, MA 02090. AT&T Wireless is licensed by the Federal Communications Commission to provide personal wireless service in areas that include Acushnet, Massachusetts.

6. The Plaintiff, TRM, is a Massachusetts Corporation with a business address of 30 Lyman Street, Suite 12, Westborough, MA 01581. TRM is in the business, *inter alia*, of constructing and managing tower facilities for federally licensed providers of wireless communication services.

7. The Defendant Town of Acushnet (the "Town") is a duly constituted municipal corporation of the Commonwealth of Massachusetts, with a place of business at 122 Main Street, Acushnet, Massachusetts.

8. The Defendant Board is a duly constituted board of the Town with an office at 122 Main Street, Acushnet, Massachusetts.

9. The Defendant Lawrence G. Marshall is the Chairman of the Board, residing at 75 Ward Street, Acushnet, Massachusetts, with a mailing address c/o Zoning Board of Appeals, 122 Main Street, Acushnet, Massachusetts.

10. The Defendant Ronald Matton is a Member of the Board, residing at 268 Hamkin Street, Acushnet, Massachusetts, with a mailing address c/o Zoning Board of Appeals, 122 Main Street, Acushnet, Massachusetts.

11. The Defendant Rick Lally is a Member of the Board, residing at 6 Donna Lane, Acushnet, Massachusetts, with a mailing address c/o Zoning Board of Appeals, 122 Main Street, Acushnet, Massachusetts.

12. The Defendant Paul Hipolito is an Alternate Member of the Board, residing at 34 Mendall Road, Acushnet, Massachusetts, with a mailing address c/o Zoning Board of Appeals, 122 Main Street, Acushnet, Massachusetts.

13. The Defendant Paul Trahan is an Alternate Member of the Board, residing at 1259 Main Street, Acushnet, Massachusetts, with a mailing address c/o Zoning Board of Appeals, 122 Main Street, Acushnet, Massachusetts.

14. Defendants Marshall, Matton, Lally, Hipolito and Trahan all rendered the decision at issue in this case.

## **NEED FOR ADDITIONAL COVERAGE IN ACUSHNET**

15. AT&T Wireless currently has a significant gap in its wireless communications services in Acushnet, in the vicinity of the proposed site, including Route 105 and Route 18 and surrounding areas in and around Acushnet (the "Coverage Gap").

16. The proposed installation would provide wireless communications services in the area of the Coverage Gap.

17. The area of the Coverage Gap includes high-demand areas in which AT&T Wireless currently lacks adequate communications service.

18. AT&T Wireless covers or plans to cover portions of the Town of Acushnet from actual or proposed sites at the following addresses: 109 South Street, Acushnet (site number 912003016B01); 142 Mendall Hill Road, Acushnet (site number 912003007A01); 111 Myrtle Street (rear), New Bedford (site number 727); 50 Industrial Drive, Mattapoisett (site number 730); 101 Page Street, New Bedford (site number 737); 121 Duchaine Boulevard, New Bedford (site number 765); 178-180 Middleboro Road, East Freetown (site number 912003001A01); 386 Vaughn Road, Rochester (site number 912003006A02); 136 Quanapoag Road, East Freetown (site number 912003008A01); 225 Chace Road, Freetown (site number 912003013B05); 98 Bowens Land, Rochester (site number 012003018A01); 3057 Acushnet Avenue, New Bedford (site number 912003032A01); and 615 Tarkiln Hill Road, New Bedford (site number 9120022034A04).

19. The above sites in and near Acushnet are not capable of providing adequate coverage throughout Acushnet or to AT&T Wireless' Coverage Gap at issue in this case, especially in light of the topography in the Town.

20. AT&T Wireless currently has no other facilities in Acushnet, beyond those listed in paragraph 18 above. Nor does it have other sites outside Acushnet that serve Acushnet in the area of the Coverage Gap (as defined above).

21. None of the existing or proposed sites in or near Acushnet provides or is capable of providing coverage to Acushnet in these high demand areas of AT&T Wireless' Coverage Gap.

## THE ACUSHNET ZONING BY-LAW, AS CONSTRUED BY THE BOARD

22. Pursuant to Section 6.2.A(2) of the Bylaw, the Board has authority to grant a special permit to allow the proposed wireless Public Utility facility.

23. Section 3.3.A of the Bylaw provides that property in the Town of Acushnet may be used "for any purpose or in any manner" in a given zoning district if the use is "set forth as permissible by special permit in said district and so authorized."

24. The Property is located within the Residence A ("RA") zoning district.

25. Section 3.3.1.B(2) of the Bylaw allows a "public utility" use in the RA district by special permit.

26. Sections 3.3.C(10) of the Bylaw provides: "No structure of any kind, including antennas, shall exceed sixty-five (65) feet in height."

27. Section, 4.2 of the Bylaw provides: "The height limitations of said schedule do not apply to antennas, chimneys, silos, skylights, tanks, towers, ventilators, and similar building features extending not more than twenty (20) feet above the height permitted in the district in which they are located and not used for human occupancy."

28. Section 3.3.1.E(4) of the Bylaw provides: "Maximum Height [in RA District]: Thirty-five (35) feet, two and one-half (2 ½) stories."

29. The proposed 170' monopole facility would exceed the height limitations of Sections 3.3C(10), 4.2 and 3.3.1.E(4) of the Bylaw. The Co-Applicants therefore requested variance relief from these provisions.

30. Section 3.3.A of the Bylaw provides: "No building or structure shall be constructed and no building, structure or land or part thereof shall be used for any purpose or in any manner other than for one (1) or more of the uses hereinafter set forth as permitted in the district in which such building, structure, or land is located or set forth as permissible by special permit in said district and so authorized."

31. Section 6.2.A(5) of the Bylaw provides: "Use variances shall not be authorized by the Board of Appeals."

32. Even if the proposed use were not a public utility, because of the overriding provisions of the federal Telecommunications Act, the Board has the ability to grant a use variance in this instance, notwithstanding Section 6.2.A(5).

33. Section 3.3.1.E(6) provides: "Lot Width: One hundred fifty (150) feet." However, this requirement is only applicable within the required lot depth, as set forth in Sections 3.3.1.E(7) and 3.3.1.E(9).

34. Portions of the existing lot do not meet the 150' lot width requirement of Section 3.3.1.E(6) of the Bylaw. Within the required lot depth, the lot width is 164.7' at its widest (frontage on Peckham Road) and 139.8' at its narrowest. The Co-Applicants requested variance relief from this provision.

35. Section 3.7.E(13) of the Bylaw provides: "Parking Requirements... (13) All Other Offices and Nonresidential Uses: Three and one-half (3½) spaces for each one thousand (1,000) square feet of gross floor area."

36. The proposed facility contemplates only one parking space due to the infrequency of visits to the unmanned facility, as well as the absence of true "floor area."

## AT&T WIRELESS' PROPOSED FACILITY

### The Site

37. The proposed facility will be constructed on a lot at 181 Peckham Road (Assessors Plat 2, Lot 12B), Acushnet, Massachusetts ("Site").

38. The Site is located in an RA District, but is currently used for materials storage purposes and abuts wooded areas and existing utility uses. Commonwealth Gas Company, the abutter to the west, has large gas storage tanks on its property. The two other principal abutting parcels (to the east and west) are also owned by the Property owner.

39. To address the Coverage Gap in question, AT&T Wireless considered several possible locations, including the Site. It chose the Site because of the existing commercial and utility uses on and adjacent to the Site, the existence of buffering from large wooded areas and because, based upon its search, the Site was the best and least intrusive site available for leasing for wireless telecommunications purposes that would cover the Coverage Gap.

### The Proposed Facility

40. Co-Applicants propose to construct a wireless communications monopole at the Site to cover AT&T Wireless' Coverage Gap. The proposed height is 170' above ground level

("AGL"), to accommodate five carriers, thereby reducing the likelihood of a need for additional towers in town.

41. The proposed facility will be set back more than 500' from the nearest road.

42. The proposed ground equipment and the "base of the tower" will be screened by existing buildings, trees and shrubs.

43. The entire facility will be enclosed inside a fenced compound. The fenced area will be sufficiently large to accommodate AT&T Wireless' ground equipment.

44. AT&T Wireless proposes to install and operate a wireless communications facility consisting of six antennas mounted on the pole and supported by up to two (2) Ericsson RBS 2106 equipment cabinets that will be installed inside the fenced compound.

45. AT&T Wireless will connect its antennas to the equipment cabinets by coaxial cables that will run across a cable tray to the pole and up the inside of the pole.

## THE PROCEEDINGS BEFORE THE BOARD

46. On or about September 30, 2003, AT&T Wireless, through its counsel, and TRM submitted an application for the following relief under the Bylaw:

(1) Special Permit for Wireless Public Utility Facility in a Residence A District (§§ 3.3.1.B(2), 3.4 and 6.2.A(2));

(2) Variances from the following provisions of the Bylaw (If Necessary, All Rights Reserved):

§§ 3.3.C(10), 4.2 and 3.3.1.E(4) (Height Variance to construct 170' tall wireless monopole facility)

§§ 3.3.A and 3.3.1.B(2) (Use Variance to permit installation and operation of proposed wireless communications facility)

§ 3.3.1.E(6) (Dimensional Variance for lot width in Residence A District)

§ 3.7.E(13) (Variance from Parking Space Requirements for Non-Residential Uses)

(3) Request for approval of alternative surfacing material (§3.7.B).

47. Co-Applicants submitted with the application a letter documenting compliance with the requirements for a special permit and variances under the By-Law and G.L. c. 40A, §§ 9, 10. The application attached 14 exhibits, including analysis from a radio frequency specialist, documentation of compliance with state and federal regulatory requirements, analysis of alternatives, detailed plans and photographs of the Site, including photosimulations showing the minimization of visual impact from the tower. The exhibits were supplemented at the hearings and in letters to the Board.

48. In the application, Co-Applicants satisfied all of the requirements for a special permit and variances under the By-Law and the Zoning Act, M.G.L. c. 40A, §§ 9 and 10, particularly in light of the Telecommunications Act of 1996.

49. On November 3, 2003, the Board held a public hearing, after publishing and mailing a public notice referring to the petition for a special permit and variances under the Bylaw.

50. Co-Applicants appeared through their respective representatives at the hearings and presented evidence and argument in support of the application. They described the Site, including the particular topographical and lot shape features as well as the project design features, described above, which satisfy the special permit and variance criteria.

51. At the hearing, AT&T Wireless presented evidence regarding its Coverage Gap, analysis of alternative sites, and photo simulations showing the proposed facility.

52. No expert testimony was presented against the application.

53. At the close of the hearing on November 3, 2003, the Board voted to deny the request to build the wireless communications facility at the Site.

54. The Board filed its decision with the Town Clerk on November 17, 2003, and the Town Clerk accepted the Decision for filing on that date.

55. The Decision recited evidence and comments by the applicants, members of the public and the Board.

56. It also reflected a request for a continuance by the applicant to address certain issues raised during the hearing. The Board denied the request.

57. The Decision did not set forth reasons adopted by the whole Board. Rather, the Board's vote was simply "to deny the request of the petitioner to build a 170' tower at 181 Peckham Rd. in Acushnet, MA." As set forth on page 1 of the Decision, this applied to both the variances and special permits requested for the proposed facility.

58. The Decision did set forth the views of two of the five Board members, including Mr. Matton's opinion that "there should be sufficient coverage with the tower on S. Main St., the tower in Rochester, and the Rt. 140 tower. He further stated that in his opinion this tower is not needed and would be an eyesore."

59. The Decision also reported that "Mr. Trahan stated that he agreed with Mr. Matton and feels that there should be sufficient coverage." It reflected Mr. Trahan's speculation that if the matter were continued the number of neighbors present opposing the application would increase.

60.  Nothing in the Decision reflects any expert opinion supporting the two Board members' claim that coverage should be sufficient without the proposed tower.

61.  Because PCS technology operates on line-of site principles, the building or structure housing the PCS antennas must be visible to some degree in order to provide coverage. Where, as here, there are no existing tall structures upon which PCS antennas could be mounted in the area, a requirement that a tower not be visible would preclude coverage.

### THE TELECOMMUNICATIONS ACT OF 1996

62.  Congress has determined that there is a public need for wireless communications services such as that provided by AT&T Wireless. The Telecommunications Act was intended to "provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies to all Americans."[1]

63.  The Telecommunications Act, while preserving certain State and local authority over the placement, construction or modification of wireless facilities, expressly preempts State or local governments from regulating such facilities in a manner that prohibits or has the effect of prohibiting the provision of personal wireless services, or from unreasonably discriminating among providers of functionally equivalent wireless services. The Telecommunications Act also requires that the decisions of State or local governments concerning any requests for authorization to place, construct or modify wireless facilities must be supported by "substantial evidence."

---

[1]  Omnipoint Communications MB Operations, LLC, v. Town of Lincoln, 107 F. Supp.2d 108, 114 (D. Mass. 2000) (citations and internal quotations omitted).

11

## COUNT I
### (Telecommunications Act of 1996 - No Substantial Evidence for Denial)

64. Plaintiffs repeat and reallege the allegations of paragraphs 1- 63, above.

65. The Telecommunications Act provides that "Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

66. The Board's Decision is not supported by substantial evidence, in violation of this requirement.

67. Without limitation, the Board's decision to base denial of the application upon the unsupported claim that existing towers offer sufficient coverage; its refusal to acknowledge AT&T Wireless' scientific proof regarding the existence of a significant coverage gap; one member's reliance upon alleged visual impact not exceeding that tolerated by the Bylaw; and its failure to consider the rights protected by the Act mean that the Decision was not supported by substantial evidence.

68. In addition, the Board's majority lacked substantial evidence for denying the Special Permit because the Board, as such, never adopted any rationale for denial.

## COUNT II
### (Telecommunications Act of 1996 - Effective Prohibition)

69. Plaintiffs repeat and reallege the allegations of paragraphs 1-68, above.

70. The Telecommunications Act provides in relevant part that "The regulation of the placement, construction, and modification of personal wireless service facilities by any State or

local government or instrumentality thereof – (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i).

71. The Site is the least intrusive means of covering the Coverage Gap.

72. After diligent search, Plaintiffs have found no existing tall structure that would permit coverage of the Coverage Gap. Nor has it found any other superior, viable property available for lease that would be suitable for providing coverage to the Coverage Gap.

73. The Bylaw prohibits use variances, but a use variance is essential to covering this area of the town, which cannot be done without a tower in the vicinity of the Site.

74. The Board's willingness to concoct a rationale, based upon unsupported speculation about the sufficiency of existing coverage, demonstrates that it is unwilling to grant the necessary permits and approvals to cover the gap in question.

75. Accordingly, the Special Permit is essential to covering the Coverage Gap.

76. As a result, Plaintiffs have suffered and continues to suffer irreparable harm by being denied and delayed the opportunity to install and operate its facility in Acushnet.

77. The Decision and the Board's practices as reflected in its procedures and substantive ruling upon the application "prohibit or have the effect of prohibiting the provision of personal wireless services," in the Coverage Gap, which cannot receive wireless communication coverage if the proposed facility is not constructed, in violation of Section 332(c)(7)(B)(i)(II) of the Act.

78. The Court should declare that the Board's Decision and the Board's practices as reflected in its procedures and substantive ruling upon the application violate the prohibition of § 332(c)(7)(B)(i).

## COUNT III
### (Declaratory Judgment)

79. Plaintiffs repeat and reallege the allegations of paragraphs 1-78, above.

80. There is an actual controversy between the parties over whether the Decision and the Board's practices as reflected in its procedures and substantive ruling upon the application are lawful under the Act, and whether AT&T Wireless' application could lawfully be denied.

81. Resolution of this controversy between the parties by the Court will have a real and concrete impact upon the delivery of wireless communications services in the affected portion of the Town.

82. Plaintiffs' contentions on these points are correct.

## COUNT IV
### (Chapter 40A, Section 17)

83. Plaintiffs repeat and reallege the allegations of paragraphs 1-82, above.

84. The Board's denial of the variance is arbitrary and capricious, exceeds the Board's authority under Massachusetts General Laws Chapter 40A, violates the Bylaw and is based on errors of law.

WHEREFORE, the Plaintiffs request that this Court enter judgment:

1. Declaring that the Bylaw and the Board's Decision violate the Act and the Zoning Act;

2. Granting temporary, preliminary, and permanent injunctive relief ordering that Plaintiffs be permitted immediately to install its facilities in accordance with its application and plans therefor;

3. Annulling the portion of the Board's Decision denying the Plaintiffs' application;

4. Ordering the Board to issue all zoning relief necessary for the proposed facility;

5. Declaring the Town's Bylaw invalid to the extent that it prohibits coverage in a large portion of the Town and, in particular, prohibits a monopole at the site;

6. Awarding the Plaintiffs reasonable attorneys' fees and costs; and

7. Awarding Plaintiffs such other and further relief as the Court deems just and proper.

| AT&T WIRELESS<br>By its attorneys, | TOWER RESOURCE MANAGEMENT, INC.<br>By its attorneys, |
|---|---|
| _[signature]_<br>Stephen D. Anderson, BBO #018700<br>Douglas H. Wilkins, BBO #528000<br>Curtis A. Connors, BBO #630288<br>ANDERSON & KREIGER LLP<br>43 Thorndike Street<br>Cambridge, MA 02141<br>(617)252-6575 | _[signature]_ Ruth Silman / DW per tel auth.<br>Kevin Joyce, BBO #567291<br>Ruth Silman, BBO #567856<br>NIXON PEABODY, LLP<br>101 Federal Street<br>Boston, MA 02110<br>(617)345-1000 |

Dated: December 8, 2003

att\AcushnetTRMLit/p/Compl-fed.wpd



The Commonwealth of Massachusetts
# TOWN OF ACUSHNET
OFFICE OF THE
ZONING BOARD OF APPEALS

**RECEIVED**

2003 NOV 17 A 10: 14



ACUSHNET
DAVID THRELFALL
TOWN CLERK

## MINUTES & DECISION
## CASE NO. 592

**PETITIONER:** AT&T Wireless PCS, LLC & Tower Resource Management, Inc.

**SUBJECT PROPERTY:** 181 Peckham Rd., Acushnet, MA.

**DATE OF PUBLIC HEARING:** November 3, 2003

**ASSESSORS PLAT: 2  LOT: 12B**

In exercise of its discretionary powers, the Acushnet Zoning Board of Appeals (Chairman Lawrence Marshall, Board Members Ronald Matton & Rick Lally and Alternate Board Members Paul Hipolito & Paul Trahan voting) voted unanimously to deny the petition of AT&T Wireless PCS, LLC & Tower Resource Management for Variances and Special Permits to build a 170' tower at the 181 Peckham Rd., in Acushnet, MA.

### THE BOARD FINDS THE FOLLOWING FACTS:

1. The co-applicants were represented by Attorney Curtis Connors who stated that the petitioners were requesting to be allowed to build a 170' monopole at 181 Peckham Rd., in Acushnet. He stated that the tower would be set back more than 500' from the road & that there is an existing 90' treeline. The proposed tower would be constructed to carry five carriers. He further stated that the petitioner proposed to construct a fenced compound for five wireless carriers. He then introduces Mr. Rakesh Goel of Bechtel Telecom, who reviewed maps with the Board which showed the existing coverage with existing towers, and the improved coverage with the proposed tower. He stated that AT&T co-locates on other towers in the Town located on Mendall Road, and on S. Main Street. AT&T also co-locates on a tower in Rochester.

2. Atty. Connors then introduced Tyler McAllister who stated that even after co-locating on other towers there is a gap in service. He stated that he has looked for other sites to locate a tower and this site will provide better coverage and reduce the gap in service.

3. Mr. Trahan stated that there is an existing tower in Acushnet (located on the Gilmore

A TRUE COPY ATTEST

*[signature]*

TOWN CLERK-ACUSHNET, MA

Case No. 592  pg. (2)

property) owned by the federal government. He then asked if that tower had been considered for co-locating. Mr. McAllister stated that the tower had been considered, but after 9/11/01, federal towers are off limits to wireless carriers. Mr. Trahan then asked if the tower in Freetown had been considered. Mr. McAllister stated that the tower is located too far to the north.

4. Mr. Marshall then asked if anyone present had any questions or comments. The Board then recognized the following abutters who all expressed concerns and objection to the petitioners request to build a tower on the subject property.
   a. Michael McDermott of 184 Peckham Rd., Acushnet, MA. stated that he is concerned with the seashells on the property, and that there is an underground river running under the property. He further stated that he is concerned with possible contamination of the wells in the area. He stated that this is a residential area and not an industrial area. He further stated that he is very opposed to the petitioners request. Mr. McDermott stated that many neighbors were present and had signed a petition in opposition to the petitioners request. (copy attached)

   b. Randolph Jhantham of 189 Peckham Rd., Acushnet, MA., stated that there are natural wetlands at the subject property. He asked that the Board deny the request of the petitioner.

   c. Robin Boardman of 158 Peckham Rd., Acushnet, MA., stated that she and all the neighbors are opposed to the petitioners request to build a tower. She stated that the neighbors are concerned with possible health issues.

   d. Donna Lopes of 178 Peckham Rd., Acushnet, MA., stated that she is an immediate abutter to the subject property. She stated that she recently moved to the area and in her opinion, locating a tower on the subject property will decrease the property value of the surrounding properties. She further stated that she is also opposed to the petitioners request.

   e. Wanda Trantham of 189 Peckham Rd., Acushnet, MA. stated that she too was opposed to the petitioners request.

5. After some further brief discussion, Mr. Matton stated that in his opinion, there should be sufficient coverage with the tower on S. Main St., the tower in Rochester, and the Rt. 140 tower. He further stated that in his opinion this tower is not needed and would be an eyesore.

6. Atty. Connors requested a continuance in order to address the conservation issues. There was some brief discussion.